382 A.2d 819.

STATE OF RHODE ISLAND *vs.* PIEDMONT FUNDING CORP. *et al.*

FEBRUARY 15, 1978.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

BEVILACQUA, C.J. This is an appeal from a judgment dismissing the plaintiff's complaint for lack of subject matter jurisdiction. The plaintiff alleged that the defendants, in selling insurance and investment programs, had violated the Deceptive Trade Practices Act (the Act), G.L. 1956 (1969 Reenactment) §6-13.1-1 et seq. The trial justice held that the transactions which were the subject of the complaint are exempted from the provisions of the Act by §6-13.1-4.

The action arises out of the sale of a leverage funding program in Rhode Island by defendant, Piedmont Funding Corporation. The program was established by the Piedmont Management Company, Inc. and was carried out through four wholly-owned subsidiaries: Pacific Fidelity Life Insurance Company (Pacific Fidelity), Piedmont Capital Corporation (Piedmont Capital), Piedmont Funding Corporation (Piedmont Funding), and Lexington Management Corporation (Lexington Management). All are named as codefendants.

Pacific Fidelity sells insurance throughout the United States. Piedmont Capital is its general agent. Piedmont Capital is also the principal broker for two of the mutual funds which were used in the program, Lexington Research Fund, Inc., and Lexington Growth Fund, Inc., also named as defendants. Lexington Management functions as an investment adviser to both funds.

The leverage funding program in Rhode Island involved the sale of life insurance and securities (mutual funds) between 1971 and 1975. A life insurance policy was sold to individuals (program holders), the premiums on the policy were funded by loans from Piedmont Funding, and the

loans were secured by mutual funds purchased by the individual program holder [usually from Lexington Research or Lexington Growth Fund]. The mutual funds were held by the Bank of New York, also a defendant, as a custodian bank. The bank was paid a $9 fee per program for its services as custodian and agent for the Rhode Island participants.

The loans were nonrecourse loans; that is, the funding company would only look to its security interest in the mutual fund shares in the event that the loans were not paid when due. Piedmont Funding financed its loans by borrowing money from Morgan Guaranty Trust Company, also a defendant in this action, which took a security interest in notes made out by program holders to Piedmont Funding. Because the leverage funding program was itself a security, it was registered with the Securities and Exchange Commission (SEC) and with the Rhode Island Division of Business Regulation prior to its sale.

Frequently, program holders would purchase additional mutual funds at regular intervals to increase their investments and, in some cases, to increase the amount of mutual funds held as collateral for the loans by Piedmont Funding. The program holders were given certain options with respect to insurability and the repayment of their loans, for which they were charged interest at rates that never exceeded 8½ percent.

In Rhode Island, Pacific Fidelity, acting through its agent Piedmont Capital, sold approximately 260 ten-year programs. This meant that the indebtedness would be paid either in 10 years or, at the option of Piedmont Funding, in 15 years. The theory underlying the program was that if the mutual funds increased in value by more than the interest rate on the indebtedness, the individual policy holder would make a profit, after repayment of his indebtedness, in the amount of the excess.

In June 1975, for economic reasons, Piedmont Funding notified all program holders that the leverage funding program was to be terminated, and claimed that the registered prospectus and related documents clearly reserved to them the right to terminate before the end of the period prescribed by the program. No release was required by defendants upon termination. We note that, as a result of investigations triggered by the complaints of policy-holders made during 1973 and 1974, the Department of Business Regulation, Division of Insurance, revoked the licenses of defendants Piedmont Capital and Pacific Fidelity and one of their agents, effective February 1976.

On September 24, 1975, the Attorney General filed a complaint under G.L. 1956 (1969 Reenactment) §6-13.1-5 seeking injunctive and other relief, alleging that defendants had employed deceptive practices in the sale of the program; namely, that they had not disclosed the risks involved in the program and that they had failed to maintain the program for the ten-year period specified at the time of the sale. The defendants moved for dismissal of the action claiming that, because the sale of insurance and securities was regulated by various governmental agencies, complaints based upon the conduct of these activities were not within the ambit of the Act. The trial justice granted defendants' motion to dismiss this complaint for lack of subject matter jurisdiction. The court, sua sponte, dismissed the action against defendant Morgan Guaranty for the same reason.

The question before this court is whether the activities of defendants were "permitted" by state and federal agencies as that term is used in section 4 of the Act and, therefore, exempt from the provisions of the Act. The plaintiff contends that section 4 does not exempt a business activity from the mandate of the Act simply because it is subject to government regulation unless the regulating agency has established that the manner in which the transaction was conducted is a

proper way of doing business. We do not agree with this analysis.

Section 6-13.1-4 reads as follows:

> "Exemptions. — Nothing in this chapter shall apply to actions or transactions permitted under laws administered by the department of business regulation or other regulatory body or officer acting under statutory authority of this state or the United States."

In interpreting this provision of the Act, we follow the rule of construction which requires that the language in a statute be given its plain and everyday meaning unless it is ambiguous. *Andreozzi* v. *D'Antuono,* 113 R.I. 155, 158, 319 A.2d 16, 18 (1974). Giving the language of §6-13.1-4 its plain meaning, we conclude that the Legislature clearly exempted from the Act all those activities and businesses which are subject to monitoring by state or federal regulatory bodies or officers.

The plaintiff, in its complaint, concedes that defendants were engaged in the business of selling insurance and securities. It is uncontroverted that both of these activities were approved by various governmental agencies and regulatory bodies. It is the rule in this state that facts admitted in the pleadings are held as true against the pleader. *Ogden* v. *Rabinowitz,* 86 R.I. 294, 300, 134 A.2d 416, 419 (1957). Thus the record in this case supports our conclusion that the transactions which constitute the basis of this complaint fall within the scope of activity common to the insurance and the securities business.

In order to sell insurance policies or mutual funds in Rhode Island, the seller must first obtain permission or register with the proper regulatory agency. The sale of insurance is permitted only under the authority of the office of the insurance commissioner, a division of the Department of Business Regulation. General Laws 1956 (1968 Reenactment) chapters 1 and 2 of title 27. The Legislature

specifically proscribed the use of deceptive practices in the sale of insurance in chapter 29 of title 27. The sale of securities within the state of Rhode Island is permitted only when conducted in accordance with §7-11-1 et seq. The sale of securities in interstate commerce is permitted only under the rules and regulations promulgated pursuant to the Securities Exchange Act of 1934, 15 U.S.C. §78a et seq. (1970), which is administered by the SEC. After the seller obtains permission or registers to engage in the activity of selling insurance or mutual funds in Rhode Island, he is subject to monitoring and regulation by the appropriate regulatory agency or officer. Therefore, in the case at bar, because the conduct at issue was clearly subject to the control of governmental agencies on both the state and federal level, it is within the exemption provision and not subject to the mandates of the Act.

When the party claiming exemption from the Act shows that the general activity in question is regulated by a "regulatory body or officer" within the meaning of §6-13.1-4, the opposing party, in this case the state of Rhode Island, then has the burden of showing that the specific acts at issue are not covered by the exemption. *Dick* v. *Attorney General*, 83 Wash. 2d 684, 689, 521 P.2d 702, 705 (1974). The defendants here have produced evidence that the sale of insurance and of mutual funds is regulated by the insurance commissioner and the SEC respectively. They have also shown that failure to comply with the rules and regulations promulgated by these agencies will result in the revocation of the license to sell insurance or mutual funds. This showing of fact is sufficient to bring the businesses involved in this action within the exemption provision of §6-13.1-4, as we construe that section. The state has not met its burden of showing that the specific actions or transactions involved do not fall within the statutory exemption. Clearly, we must conclude that the business activities in the case at bar were permitted by both state and federal regulatory bodies and officers and, within the meaning of §6-13.1-4, outside the ambit of the Act.

The plaintiff's appeal is denied and dismissed and the judgment appealed from is affirmed.

Mr. Justice Paolino participated in the decision but retired prior to its announcement.

For plaintiff:    *Julius C. Michaelson,* Attorney General, *Allen Rubine,* Special Assistant Attorney General.

For defendants:    *Edwards & Angell, Deming E. Sherman, John V. Kean* (for Piedmont Funding Corp., Piedmont Capital Corp., Pacific Fidelity Life Insurance Company, Piedmont Management Co., Inc. and Lexington Management Corp.).

*Tillinghast, Collins & Graham, Edwin H. Hastings* (for the Bank of New York).

*Hanson, Curran, Bowan & Parks, A. Lauriston Parks* (for Morgan Guaranty Trust Co. of New York).

*Hinckley, Allen, Salisbury & Parsons, George M. Vetter, Jr.* (for Lexington Research Fund, Inc. and Lexington Growth Fund, Inc.).