737 P.2d 1180

**STATE of New Mexico, ex rel. Hal STRATTON, Attorney General, Plaintiff-Appellant,**

v.

**GURLEY MOTOR COMPANY, a New Mexico Corporation, Defendant-Appellee.**

No. 8604.

Court of Appeals of New Mexico.

April 23, 1987.

Certiorari Denied June 1, 1987.

**804**

Hal Stratton, Atty. Gen., Wayne H. Bladh, Frank D. Weissbarth, Asst. Attys. Gen., Santa Fe, for plaintiff-appellant.

Mark F. Sheridan, Anne B. Hemenway, Montgomery & Andrews, P.A., Santa Fe, for defendant-appellee.

## OPINION

DONNELLY, Chief Judge.

The state appeals from a judgment dismissing with prejudice its complaint for injunctive relief, restitution and civil penalties. Three issues are presented on appeal: (1) whether the state was barred from bringing suit against defendant Gurley Motor Company for alleged payment of illegal insurance premium rebates and deceptive trade practices under the Unfair Practices Act (UPA); (2) whether the Unfair Insurance Practices Act (UIPA) precludes the state from bringing suit against defendants based upon alleged misrepresentations; and (3) whether defendants are immune from suit herein under an exemption contained in the Unfair Practices Act. Reversed and remanded.

The state, on the relation of the attorney general, brought suit in November 1983, against defendants Gurley Motor Company, a corporation, Lloyds of the Southwest insurance company, and eight other individuals. The complaint filed by the state alleged that defendants had violated the New Mexico Unfair Practices Act, NMSA 1978, Sections 57–12–1 to –16, by paying illegal insurance premium rebates from Lloyds to defendant Gurley Motor Company. The state also contended defendants had engaged in other deceptive practices. The state sought injunctive relief, civil penalties, and the payment of restitution to consumers alleged to have been injured by the unlawful practices.

After suit was filed, the district court permitted ten other individuals to intervene in the action as additional party plaintiffs. Intervenors have not appealed from the judgment of dismissal.

Defendants moved to dismiss the complaint under SCRA 1986, Rule 1–012(B)(6) for failure to state a claim upon which relief may be granted. The motion for dismissal was based upon two grounds: (1) defendants asserted that their alleged conduct was governed exclusively by the Unfair Insurance Practices Act, NMSA 1978, Sections 59–11–9 to –22; and (2) that even if the Unfair Practices Act did apply to the

conduct of defendants, Section 57–12–7 of the UPA exempted their conduct from liability.

Following a hearing on defendants' motion, the trial court granted the motion to dismiss. The state has abandoned its appeal to all defendants except Gurley Motor Company.

## I. EXCLUSIVITY OF UNFAIR INSURANCE PRACTICES ACT

At the hearing on the motion to dismiss, the state contended that between August 1978 and May 1981, defendant Gurley Motors solicited insurance sales and referred customers to Lloyds for insurance on vehicles sold by Gurley. During this period, Lloyds paid Gurley a commission out of premiums that customers paid to Lloyds for motor vehicle insurance. The state asserted that Lloyds and Gurley Motors knew that Gurley was neither a licensed insurance agent, broker nor solicitor at the time Gurley received the rebates. The state also asserted that neither Gurley nor Lloyds disclosed to customers that Gurley received a substantial rebate out of insurance premiums; that Gurley and Lloyds falsely stated to customers that the premium for the insurance policies was in consideration for insurance services—when a portion included an illegal payment to Gurley; and that Gurley and Lloyd made false or misleading statements and failed to disclose material information to customers concerning their common ownership and the insurance premium and commission payments, which tended to deceive customers.

The trial court ruled that the complaint did not state a claim under the Unfair Practices Act because Gurley's conduct was governed exclusively by the provisions of the Unfair Insurance Practices Act. In so ruling, the trial court determined that the UIPA constituted specific legislation that controlled over the general legislation of the UPA.

The New Mexico Legislature enacted a comprehensive Unfair Practices Act, Sections 57–12–1 to –16, in 1967. This Act prohibits unconscionable and unfair or deceptive trade practices. § 57–12–3. The Unfair Insurance Practices Act was enacted in 1973 and also prohibits certain unfair methods of competition and unfair or deceptive acts or practices in the business of insurance.[1] §§ 59–11–12 and –13. Defendant contends that the UIPA supersedes the provisions of the UPA because the statutes apply to the same subject matter and irreconcilable conflicts exist within their respective applications. We jointly discuss the state's first and second points raised on appeal.

The rule that a specific statute controls over a general statute dealing with the same subject matter applies only when the two statutes apply to the same conduct. *See State v. Ross*, 104 N.M. 23, 715 P.2d 471 (Ct.App.1986) (two statutes must proscribe the same act in order for the specific offense to prevail over the more general crime). In order for a specific statute to prevail over the general, there must exist conflicting statutory provisions, *State v. Gabaldon*, 92 N.M. 230, 585 P.2d 1352 (Ct. App.1978), such that a necessary repugnancy cannot possibly be harmonized. *State v. Blevins*, 40 N.M. 367, 60 P.2d 208 (1936). Absent an irreconcilable conflict, a specific statute prevails over the general statute only upon a clearly expressed legislative intention to repeal. *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). On the other hand, where there is no clear intention, a specific statute will not be controlled or nullified by a general one. *Id.* It is the duty of the courts to regard each statute as effective whenever they are capable of co-existence. *Id.*

### (A) *Unconscionable Trade Practice Claim*

The state contends that defendant's practice of soliciting insurance sales and receiving commission payments without a

---

**1.** Following the filing of this action, the 1984 legislature enacted a comprehensive New Mexico Insurance Code, NMSA 1978, Sections 59A–1–1 to 59A–53–17, which repealed the former UIPA and replaced it with Trade Practices and Frauds, Sections 59A–16–1 to –30, effective January 1, 1985.

license for that solicitation and receipt is an unconscionable trade practice under Section 57–12–2(D) that is not expressly prohibited by the UIPA. *See* § 59–11–13. To the extent this unconscionable trade practices claim pertains to the receipt of commission payments, we note that Section 59–11–13(H) of the UIPA does define as an unfair or deceptive act or practice the

> [P]aying or allowing, or giving or offering to pay, allow or give as inducement to [life or accident and health] insurance or annuity, any rebate of premiums payable on the contract, or any special favor or advantage in the dividends or other benefits thereon, or any valuable consideration, inducement or anything of value whatsoever which is not specified in the contract.

Although this provision relates to the subject matter of the state's claims, we discern no conflict insofar as this section concerns rebates not specified in the contract for insurance other than for a motor vehicle. The state's complaint alleged that commissions were paid out of premiums paid for insurance covering motor vehicles.

The purpose of the UIPA as it existed when this action was initiated, as declared in Section 59–11–10, was to regulate trade practices in the business of insurance by defining all trade practices that violate the Act. This regulatory purpose is not furthered by reading into the UIPA a grant of immunity from suit under the Unfair Practices Act for conduct not specifically mentioned in the UIPA as the statute existed at the time this action was initiated. *Cf. Patterson v. Globe Am. Casualty Co.,* 101 N.M. 541, 685 P.2d 396 (Ct.App.1984) (even though the UIPA did not provide a private right of action against an insurer, the court expressly noted that it did not exclude private actions against insurers from sources other than the Act). Although we recognize that each statute possesses different enforcement methods and penalty provisions, we do not consider these differences to rise to the level of an irreconcilable conflict.

## (B) *Unfair or Deceptive Trade Practices Claim*

The state also contends that the UIPA does not preclude its UPA unfair or deceptive trade practices claim based on defendant's alleged misrepresentations, even though it concedes that both statutes apply to the same alleged conduct. The most significant difference between these statutes regarding this claim lies in their respective remedies.

The UPA authorizes the attorney general to pursue injunctive relief and restitution to injured persons, in addition to actions for civil penalties for willful violations of the Act. The UPA also authorizes private actions for actual or statutory damages, injunctive relief, and attorneys fees.

The Unfair Insurance Practices Act authorizes the superintendent of insurance to issue cease and desist orders, to suspend or revoke the licenses of insurance companies, to seek injunctive relief in order to preclude improper trade practices, and to initiate actions for imposition of civil penalties for violations of the UIPA.[2] The UIPA, however, does not give the superintendent authority to seek damages or restitution in actions brought by him.

Our examination of the UPA and the UIPA indicates that the legislature did not intend to preclude claims by the state under other laws for misrepresentations or alleged improper conduct relating to insurance activities. Instead of conflicting, each Act's remedial scheme functions to achieve different but complimentary results: the UIPA remedies regulate the insurance industry primarily through administrative enforcement, whereas the remedies under the UPA have distinct compensatory elements, providing relief to the injured person, as opposed to policing the industry.

We determine that the legislature, in enacting the UIPA, did not intend to make the UIPA the exclusive remedy under state law for conduct prohibited in that Act. For example, a private plaintiff may pursue the remedies contained under Section 57–12–10

**2.** Sections 59A–15–1 to –13 of the 1984 enactment (Insurance Code) also govern unauthorized insurance practices, including representing or aiding unauthorized insurers.

for unfair or deceptive trade practices, notwithstanding the statutory authority investing the superintendent of insurance with broad administrative powers under the Insurance Code. *See Ray v. United Family Life Ins. Co.,* 430 F.Supp. 1353 (W.D.N.C.1977); *Ellis v. Smith-Broadhurst, Inc.,* 48 N.C.App. 180, 268 S.E.2d 271 (1980); *see also Fox v. Indus. Casualty Ins. Co.,* 98 Ill.App.3d 543, 54 Ill.Dec. 89, 424 N.E.2d 839 (1981).

## II. APPLICABILITY OF UNFAIR PRACTICES ACT

Defendant argues that under Section 57–12–7 of the UPA, its conduct was exempted from the sanctions and relief provided in the UPA. Section 57–12–7 declares that, "Nothing in the Unfair Practices Act * * * shall apply to actions or transactions permitted under laws administered by a regulatory body of the state of New Mexico or the United States."

Defendant contends the language of Section 57–12–7 places the responsibility for regulating the complained-of conduct under the superintendent of insurance, even though defendant was not a licensed insurance agent, and exempts defendant from the provisions of the Unfair Practices Act. In support of their arguments, defendant also contends the alleged illegal rebates between Lloyds and Gurley Motors were subject to regulation under the Insurance Holding Company Act, NMSA 1978, Sections 59–7–1 to –33.

Defendant contends that Lloyds is an insurer within the meaning of the Insurance Holding Company Act and that Gurley Motors is an affiliate; hence, Lloyds and Gurley Motors were exempt from regulation under the Unfair Practices Act.

■ We disagree that defendant Gurley was exempt from action by the state under the Unfair Practices Act by reason of the exemption contained in Section 57–12–7. The language of the exemption statute only applies to activities that are permitted under other laws, not activities that are not even implicitly authorized under other regulatory licensing laws. We construe the language "permitted under laws adminis-

tered by a regulatory body" in Section 57–12–7 to require more than the mere existence of a regulatory body in order for the exemption to apply. At a minimum, the regulatory body must actually administer the regulatory laws with respect to the party claiming the exemption, thereby exercising at least the modicum of oversight that the exempting language indicates is required. In effect, this means the regulatory body must render permission to engage in the business of the transaction through licensing, registration or some similar manifestation of "permitting" the business activity. Until the party complies with the requisite licensing or registration procedure, the regulatory body cannot be deemed to have authorized, or implicitly permitted, any transactions in the area subject to regulation.

Other jurisdictions are in accord with this reasoning. *See, e.g., State v. Piedmont Funding Corp.,* 119 R.I. 695, 699–700, 382 A.2d 819, 822 (1978); *State ex rel. McLeod v. Rhoades,* 275 S.C. 104, 267 S.E.2d 539 (1980) (citing and quoting *State v. Piedmont Funding Corp.* with approval). In *Piedmont,* the Rhode Island Supreme Court reviewed whether the trial court's dismissal of the state's complaint alleging various deceptive trade practices in sales of insurance and investment programs was proper under an exemption provision nearly identical to that on review here and observed:

In order to sell insurance policies or mutual funds in Rhode Island, the seller must first obtain permission or register with the proper regulatory agency. The sale of insurance is permitted only under the authority of the office of the insurance commissioner * * *. After the seller obtains permission or registers to engage in the activity of selling insurance or mutual funds in Rhode Island, he is subject to monitoring the regulation by the appropriate regulatory agency or officer. Therefore, in the case at bar, [when a seller has obtained permission through registering or licensing under the Act] because the conduct at issue was clearly subject to the control of gov-

ernmental agencies on both the state and federal level, it is within the exemption provision and not subject to the mandates of the Act. [Citation omitted.]

The dismissal by the trial court in *Piedmont* was affirmed, however, because defendant proved that the sale of insurance and mutual funds was regulated by the insurance commissioner and SEC respectively, and that failure to comply with the respective rules and regulations would result in revocation of the license to sell insurance or mutual funds.

Similarly, in *Allen v. American Land Research*, 95 Wash.2d 841, 631 P.2d 930 (1981) (en banc), the state supreme court reviewed whether an exemption provision, similar to ours, applied in an action against real estate brokers under the Washington Consumer Protection Act for alleged fraud in land sales because defendants were regulated under the Washington Brokers Act.

The court noted that:

[A]n agency must do more than merely monitor the business practices of those who are in the area; the entry into that area must also be controlled. *State v. Reader's Digest Ass'n*, 81 Wash.2d 259, 501 P.2d 290 (1972). The Brokers Act clearly controls entry into the occupation of selling real estate. The provisions of that act cover licensing of brokers, and require brokers and salespersons to conform to certain standards and code of conduct in order to maintain those licenses. But for those who are not licensed, the Brokers Act obviously does not act as a regulatory agency.

*Id.* at 846, 631 P.2d at 933–34; *see also Ferguson v. United Ins. Co. of America*, 163 Ga.App. 282, 293 S.E.2d 736 (1982) (summary judgment in favor of defendant was correctly granted under Fair Business Practices Act where insurance transactions were regulated by Insurance Code in that no insurer could transact insurance except as authorized by certificate of authority from insurance commissioner).

■ We do not interpret Section 57–12–7 to exempt from the application of the provisions of the Unfair Practices Act (as the law existed at the time of the filing of this action), unlicensed individuals or entities who are engaged in activities that are not permitted by state or federal regulatory bodies.[3] Similarly, Gurley Motors was not immune from suit under the Unfair Practices Act as an affiliate of Lloyds. Defendant Gurley Motors was organized as a separate legal entity, and under the allegations of the complaint filed herein was not authorized to solicit orders for insurance or to receive insurance commission rebates.

■ The attorney general is specifically charged with responsibility for enforcing the Unfair Practices Act. *See* §§ 57–12–8; –15. Because the Unfair Practices Act constitutes remedial legislation, we interpret the provisions of this Act liberally to facilitate and accomplish its purposes and intent. *Albuquerque Hilton Inn v. Haley*, 90 N.M. 510, 565 P.2d 1027 (1977). *Cf. Mutz v. Municipal Boundary Comm'n*, 101 N.M. 694, 688 P.2d 12 (1984).

■ The alleged activities of the defendant, which are the subject of the state's complaint herein, were not authorized transactions permitted under the insurance laws of this state; hence, they were not exempted from actions or relief sought under the Unfair Practices Act.

We have considered the other arguments raised by appellee on appeal and consider them to be without merit.

The trial court's order dismissing the state's complaint is reversed and the cause remanded for trial on the merits.

IT IS SO ORDERED.

ALARID and APODACA, JJ., concur.

---

3. The new Insurance Code, under Section 59A–16–17, expressly prohibits the payment of rebates from vehicle or title insurers to non-licensed agents, provides for supervision of insurance trade practices and acts by the superintendent of insurance under Section 59A–16–1, provides for criminal penalties and the issuance of cease and desist orders, Sections 59A–16–27, –29, and provides for a private cause of action under Section 59A–16–30.