**GREATER PROVIDENCE MRI LIMITED PARTNERSHIP, d/b/a MRI Center of Greater Providence, Plaintiff,**

v.

**MEDICAL IMAGING NETWORK OF SOUTHERN NEW ENGLAND, INC. and United Healthcare of New England, Inc., Defendants.**

C.A. No. 98–0027L.

United States District Court,
D. Rhode Island.

Dec. 10, 1998.

Maria J. Goncalves, James McKay, Adler, Pollock & Sheehan, Providence, RI, for plaintiffs.

Patricia A. Sullivan, Edwards & Angell, Providence, RI, and Michael F. Brockmeyer, Piper & Marbury, Baltimore, MD, for Medical Imaging.

R. Kelly Sheridan, Jr., Roberts, Carroll, Feldstein & Peirce, Providence, RI, Barbara H. Ryland, Arthur N. Lerner, Michaels, Wishner & Bonner, Washington, DC, for United Healthcare of N.E., defendants.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

Magnetic resonance imaging ("MRI") allows doctors to peer inside a patient's body and diagnose maladies invisible to x-rays and standard examination. In Rhode Island, the only companies currently licensed to provide those services are Greater Providence MRI Limited Partnership ("plaintiff") and Rhode Island Magnetic Resonance Imaging Network, Inc. ("RIMRIN").

Plaintiff alleges antitrust violations against United Healthcare of New England, Inc. ("United"), a health maintenance organization, and Medical Imaging Network of Southern New England, Inc. ("Medical Imaging"), a company that provides MRI services in Rhode Island by subcontracting to RIMRIN. United and Medical Imaging ("defendants") have an exclusive contract by which United only reimburses its customers for MRIs performed by Medical Imaging and its subcontractor RIMRIN. Plaintiff alleges that the contract has the effect of reducing competition and facilitating a monopoly by Medical Imaging and RIMRIN in Rhode Island.

Specifically, plaintiff filed a five-count Amended Complaint: Count I for exclusive dealing under Section 3 of the Clayton Act, 15 U.S.C. § 14; Count II for restraint of trade under Section 1 of the Sherman Act, 15 U.S.C. § 1; Count III for exclusive dealing under Section 6 of the Rhode Island Antitrust Act, R.I.Gen.Laws § 6–36–6; Count IV for restraint of trade under Section 4 of the Rhode Island Antitrust Act, R.I.Gen.Laws § 6–36–4; and Count V for exclusive dealing under Section 6 of the Rhode Island Antitrust Act.

Plaintiff defines the relevant geographic market as greater Providence, including Providence, Kent and Bristol counties. Plaintiff defines two separate and independent business markets involving the use of MRI machines: 1) a product component consisting of the scans recorded on film ("MRI Scans") and 2) a service component consisting of the diagnostic interpretation of the

film ("Diagnostic Services"). Plaintiff alleges that three insurance providers, United, Blue Cross & Blue Shield and Medicare/Medicaid, account for more than 85% of Rhode Island's insured patient base.

Plaintiff alleges that physicians determine the need for MRI Scans and refer their patients to an MRI provider. Therefore, it is critical for an MRI provider to be able to market its products and services to physicians. Those physicians, plaintiff alleges, want diagnostic facilities to handle all three major insurance providers so physicians need not worry whether a specific patient will be reimbursed for using a specific MRI provider. Because MRI Scans are expensive, patients "virtually never" go outside their insurance plans.

Each defendant has filed (1) a motion to dismiss all counts on the ground that no antitrust violation (state or federal) has been alleged, and (2) a motion to dismiss or grant partial summary judgment on Counts III, IV and V, the state law claims, on the ground that the exclusive contract here is exempted under state antitrust law because it was approved by two state regulatory agencies.

In considering the first motions to dismiss, this Court must take all well-pled allegations as true. This analogizes to a doctor who can only examine by hand a patient with a possible malignancy buried beneath bone and flesh. The doctor must assume the worst because she cannot see inside the patient's body. In the future, a summary judgment motion may, like an MRI scan, provide this Court with relevant facts from which to draw inferences and settle whether defendants' contract is a malady that must be cured. And, of course, there always lurks the possibility of the law's invasive equivalent of an operation—a trial to root out any malignancy through the details of testimony and evidence.

However, at this stage, it is inappropriate to dismiss plaintiff's allegations. As outlined below, plaintiff has alleged facts that, if proven, may constitute a federal or state antitrust violation. United's counsel is correct that the claims are remarkable, but the law is clear that this Court cannot consider the likelihood of plaintiff's success at this juncture. Therefore, each defendant's motion to dismiss all counts is denied.

As to each defendant's motion to dismiss or grant partial summary judgment on Counts III, IV and V, this Court enjoys less guidance. Defendants argue that state antitrust law does not reach this case because the statute exempts contracts approved by a state regulatory agency. Plaintiff offers a conflicting reading of the statute, and this Court finds no compelling or even persuasive precedent in Rhode Island law. These counts are significant but secondary to the federal claims, and as such, it is appropriate to allow Rhode Island to articulate its own law. Therefore, the Court will not make brevis disposition and may certify a question to the Rhode Island Supreme Court, if that becomes necessary, when the facts are sufficiently developed.

## DISCUSSION

### I. Legal Standard for Motion to Dismiss

In ruling on a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences. *See Negron–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir.1994), *cert. denied*, 513 U.S. 1149, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995). Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### II. Defendants' Motions To Dismiss All Counts

The tests for exclusive dealing are essentially the same under Section 1 of the Sherman Act and Section 3 of the Clayton Act. *See Mozart Co. v. Mercedes–Benz of North America, Inc.*, 833 F.2d 1342, 1352 (9th Cir.1987). The substantive test under Rhode Island antitrust laws is comparable. *See* R.I.Gen.Laws § 6–36–2(b). *See also ERI Max Entertainment, Inc. v. Streisand*, 690 A.2d 1351, 1353 n. 1 (R.I.1997).

This case does not present any allegations, such as secondary boycott, that would require a per se test. *See U.S. Healthcare, Inc. v. Healthsource, Inc.*, 986 F.2d 589, 593 (1st Cir.1993). Instead, the test to be applied is the so-called "rule of reason." *See Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 329, 81 S.Ct. 623, 629, 5 L.Ed.2d 580 (1961); *U.S. Healthcare*, 986 F.2d at 595. The plaintiff must establish that "performance of the contract will foreclose competition in a substantial share of the line of commerce affected." *See Tampa Elec. Co.*, 365 U.S. at 327, 81 S.Ct. at 628. In determining the probable effect of the contract on the market, this Court must consider the extent of the foreclosure, the relative strength of the party, the relative value of the commerce at issue, and the buyer's and seller's business justifications for the arrangement. *See Tampa Elec. Co.*, 365 U.S. at 329, 81 S.Ct. 623; *Barry Wright Corp. v. ITT Grinnell Corp.*, 724 F.2d 227, 236–37 (1st Cir.1983).

In support of the motions, defendants argue that plaintiff has not met its burden under the test, specifically the burden to allege that *performance of the exclusive agreement* forecloses competition in the MRI Scan and Diagnostic Services markets. United summarizes the argument succinctly:

> Such a phenomenon, however, cannot in antitrust terms be said to result from the defendants' conduct in entering into an exclusive dealing arrangement. This purported harm arises out of the independent acts of the referring physicians, based on their own assessment of the convenience, utility, and advantages of using one provider versus another.

(Mem. In Supp. of Mot. To Dismiss or, in the Alternative, for Partial Summ. J at 7.) Offering a colloquial analogy, United compares its contract to an exclusive deal between the Providence Bruins and an orthopedic surgery group practice. That deal might increase the doctors' reputations. Patients might prefer to use the same doctors as the Bruins, there-

by decreasing business for competing surgeons. (*See* id. at 7–8.)

The flaw in the analogy shows why this case must survive motions to dismiss. Plaintiff has not alleged that Magnetic Imaging's reputation was enhanced by its exclusive agreement with United. If plaintiff lost business because doctors or patients perceived Magnetic Imaging as merely preferable, then that would not be an antitrust injury.

Plaintiff has alleged that the exclusive contract between United and Medical Imaging closes it out of the market because no company can compete without serving United, Blue Cross & Blue Shield and Medicare/Medicaid. It alleges that doctors will not send business to a company that cannot provide "one stop" coverage for those three programs. Thus, it alleges a nexus between the exclusive contract and its injury. Admittedly, the language in the Amended Complaint is wan:

> Diagnostic specialists *typically want* outside diagnostic facilities to also be allowed to handle patients covered by all the major insurance providers so that the physician does not have to be concerned with what coverage the patient has that would limit the physicians' recommendation of where to go for the diagnostic test.

(Amended Complaint at 5) (emphasis added). However, its counsel was sufficiently emphatic and clear in oral arguments. On a motion to dismiss, this Court must assume that this allegation is true: that the MRI market is such that competition is limited to companies that serve all three insurance providers. In that allegation, plaintiff does allege market power. It alleges that United has the power to create an MRI monopoly by signing an exclusive deal with one MRI provider. That, under plaintiff's theory, would represent 85 percent of the business.

This assumption will be tested at the summary judgment stage or at trial. Then, this Court will be free to examine evidence and decide, among other issues, the legal significance of doctors' preference for MRI companies that provide "one stop" coverage.[1] The

---

1. The Court will also be free to gauge the defendants' business justifications and the significance of nascent MRI providers that have applied to

compete in a market that plaintiff thinks is anticompetitive. Although defendants noted these

legal question is whether there is a connection between the exclusive dealing and an antitrust harm. *See Interface Group, Inc. v. Massachusetts Port Authority*, 816 F.2d 9, 10–11 (1st Cir.1987). Practically, the question is whether plaintiff can prove that it cannot compete unless it can offer "one stop" service.

Obviously, plaintiff relies on this "one stop" issue in order to cobble together the three insurers and to allege that it is foreclosed from 85 percent of the market. There is no allegation that United's own customer base is numerous enough to foreclose competition on its own. In the briefs and oral arguments, defendants assert that the preference for "one stop" service is merely one of many preferences that doctors exhibit. In most industries, competitors woo customers by emphasizing different preferences—price, service, waiting times, reputation, etc., and the exclusive agreement may be merely a single preference. If doctors are independent actors as defendants say—even if they are merely lazy and prefer RIMRIN to avoid paperwork, then their independent choice severs the exclusive contract from any injury. However, plaintiff portrays this "one-stop" preference as an untransmutable fact of the MRI market.

Despite United's assertion, plaintiff need not allege that the exclusive contract "prohibits" physicians from referring non-United patients to plaintiff. The fact that doctors select the MRI provider adds a wrinkle to this dispute. In most cases, such prohibition exists because plaintiffs want to do business with one of the parties to the exclusive contract. *See, e.g., U.S. Healthcare*, 986 F.2d at 592 (HMO objects to contract between doctors and rival HMO); *M & H Tire Co., Inc. v. Hoosier Racing Tire Corp.*, 733 F.2d 973, 974 (1st Cir.1984) (tire manufacturer objects to contract between car owners and rival tire manufacturer). But this Court cannot adopt a sweeping rule that an exclusive contract affects only the parties to the contract. In this case, plaintiff wants business from doctors and patients. Neither is a party to the contract. Certainly, a single HMO with 85 percent market share could not escape anti-

trust consequences merely because a similar contract does not "prohibit" its customers from using another MRI provider and paying the bill themselves. The insurer or HMO wields power in today's medical industry, and an insurer or HMO could create an exclusive contract that forecloses competition and injure parties beyond those to the contract.

To assure both parties that this opinion offers no radical redefinition of antitrust law, this Court notes that most cited cases were decided by district courts on the merits. *See U.S. Healthcare*, 986 F.2d at 591 (after trial); *M & H Tire Co., Inc.*, 733 F.2d at 974 (after trial); *Barry Wright Corp.*, 724 F.2d at 228 (after judgment); *HTI Health Services, Inc. v. Quorum Health Group, Inc.*, 960 F.Supp. 1104, 1107 (S.D.Miss.1997) (after trial). Prominent exceptions where district courts dismissed the cases include *Interface Group, Inc.*, 816 F.2d at 10 and *Gould v. Sacred Heart Hospital of Pensacola*, 1998 U.S. Dist. LEXIS 17434 (N.D.Fla.1998). However, both cases contained fatal flaws not present here. *See Interface Group, Inc.*, 816 F.2d at 11 (plaintiff did not allege defendant benefitted from exclusive agreement); *Gould*, 1998 U.S. Dist. LEXIS 17434 at *63–64 (plaintiff did not allege that a single contract created the anti-competitive effect).

Whether defendants' contract forecloses competition and injures plaintiff is an issue that this Court can only decide with the more-sensitive tools of summary judgment or trial. Therefore, the motions to dismiss all counts are denied.

III. *Legal Standard for a Motion for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law.

issues in their briefs, the facts can not be

weighed at this time.

Fed.R.Civ.P. 56(c). Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27, 31 (1st Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.*, 133 F.3d 103, 106 (1st Cir.1997). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir.1995). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167, 169 (D.R.I.1991).

### IV. *The State Antitrust Exemption*

This Court will consider this issue under the rubric of a motion for partial summary judgment on Counts II, IV and V. It declines to take judicial notice of regulatory approvals and decide this state antitrust question by use of a motion to dismiss. Plaintiff has requested discovery under F.R.C.P Rule 56(f), and that is appropriate. Therefore, this Court expressly notifies the parties of its intention to convert both motions to dismiss into a motion for partial summary judgment. *See EEOC v. Green*, 76 F.3d 19, 24 (1st Cir.1996).

Plaintiff will have time for discovery because this Court can not yet decide the issue on the merits. The operative portion of the Rhode Island antitrust statute sets forth:

Any activity or activities exempt from the provisions of the antitrust laws of the United States shall be similarly exempt from the provisions of this chapter. The exemp-tions shall be liberally construed in harmony with federal statutes and ruling judicial interpretations of the United States courts, with due regard for the need to exempt conduct otherwise exempt under federal law but for the absence of any nexus with interstate commerce, except where the provisions of this chapter are expressly contrary to applicable federal provisions as construed. *Nothing contained herein shall be construed to apply to activities or arrangements approved by any regulatory body or officer acting under statutory authority of this state or of the United States.*

R.I. Gen.Laws § 6–36–8 (emphasis added). Defendants argue that the final sentence excludes their conduct from the state antitrust law because the exclusive contract was approved by both the Rhode Island Department of Health and Rhode Island Department of Business Regulation. Plaintiff characterizes the entire section as a mere codification of the federal state action doctrine.

Defendants argue that the third sentence mentions "statutory authority" and not the broader state action doctrine, and they note plaintiff's reading would relegate the third sentence to surplusage. Plaintiff appears to argue that the section's first sentence codifies the state action doctrine, while the remaining words merely explain the doctrine. However, both parties have been more successful at debunking their opponents' precedents than bolstering their own. Defendants cannot rely on *State v. Piedmont Funding Corp.*, 119 R.I. 695, 382 A.2d 819 (R.I.1978), because the exception to the general trade practices regulations would have only applied where the state had imposed another, more specific regulation to the industry. There is at least a question of fact as to whether state regulators examined the antitrust issue when they evaluated the contract. Similarly, plaintiff cannot depend entirely on *Fischer, Spuhl, Herzwurm & Associates v. Forrest T. Jones & Co.*, 586 S.W.2d 310 (Mo.1979). Pitting the Missouri Supreme Court against contrary decisions from other states is fruitless. These courts do not face identical statutory language, and even if they did, they cannot

divine what the Rhode Island legislature intended.

That task, generally, is performed by the Rhode Island Supreme Court. Although federal courts often must step into those shoes, this case offers this Court the luxury of consulting with the final authority. No matter the decision on this issue, this case will move forward, at a minimum, on the federal claims. The parties must pursue discovery, and any motions for summary judgment by defendants based on the issues discussed above would affect the state and federal counts identically. Therefore, this Court can certify a question to the Rhode Island Supreme Court without worrying that delay and extra expense will overcome the case. *See Clay v. Sun Ins. Office Ltd.*, 363 U.S. 207, 227, 80 S.Ct. 1222, 1234, 4 L.Ed.2d 1170 (1960) (Douglas, J. dissenting) (noting expense of a certified question).

The issue in this case is whether R.I. Gen.Laws § 6–36–8 exempts from the state antitrust law an HMO's contract that was previously approved by the State Department of Health and the State Department of Business Regulation. This is an issue implicating a strong state interest because the law affects intrastate activities,and at this point, the outcome is unclear. *Cf. Slessinger v. Secretary of Health and Human Services*, 835 F.2d 937, 942 (1st Cir.1987) (using "clear" as the test for certification). The outcome will control the case because this Court will grant summary judgment if the regulatory approval exempts defendants' contract from the antitrust law.

It would be unproductive to certify a question to the Rhode Island Supreme Court now for two reasons. First of all, the facts need to be developed. Secondly, the issue may become moot. If plaintiff prevails on the federal claims, plaintiff's remedy will be complete. If plaintiff loses on the merits of the federal claims, the state case will probably be dismissed without prejudice so that it can be pursued in the state courts where such questions should properly be decided. If, for some reason, the case remains here, an appropriate question or questions can be certified to the Rhode Island Supreme Court.

**CONCLUSION**

For the foregoing reasons, defendants' motions to dismiss all counts are denied, and defendants' motions for partial summary judgment on the state antitrust law claims will not be decided. If it becomes necessary at a later time, this Court will certify state law issues to the Rhode Island Supreme Court. It is so Ordered.