FIRST OF MAINE COMMODITIES

v.

Roger J. DUBE et al.

Supreme Judicial Court of Maine.

Argued Nov. 9, 1987.

Decided Dec. 18, 1987.

Robert J. Daviau (orally), Daviau, Jabar & Batten, Waterville, for plaintiff.

James A. McCormack (orally), Richardson & Troubh, Portland, for defendants.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

Defendants Roger and Rita Dube appeal a judgment entered by the Superior Court (York County) following a jury trial awarding to plaintiff First of Maine Commodities ("Commodities") the $69,000 broker's commission it claimed for producing a ready, willing, and able buyer for certain real estate in Old Orchard Beach owned by the Dubes. Finding no reversible error, we affirm.

On April 10, 1984, the Dubes signed an "exclusive right to sell" listing agreement with plaintiff Commodities, a corporation that at all times relevant to this case has acted through its president, Alan Theriault, a licensed real estate broker. With the exception of sales to three named individuals already negotiating with the Dubes, the listing agreement gave plaintiff the exclusive right to sell defendants' hotel and apartments located at 27 East Grand Avenue in Old Orchard Beach. The agreement ran for only one week; namely, until midnight, April 17. The listing price was $1.1 million, with $100,000 earnest money and the remainder to be paid in cash at closing. The agreement specified the broker's fee as a percentage formula resulting in a $69,000 commission on a sales price of $1.1 million. Finally, the agreement required payment of the commission if the broker negotiated a sale for the Dubes "at any other price or terms acceptable to" them.

On April 13 Theriault brought to the Dubes an offer of $1 million for the property from Ronald Vincent and David Rapaport, accompanied by earnest money of $100,000. The offer also conditioned the sale on the provision by the sellers of a title abstract and title insurance, as well as on the completion of an adequate land survey and the buyers' successful procurement of licensing for the condominium project they planned. When presented with the offer Mrs. Dube did not reject it but did express disappointment with the price. At trial, testimony of the parties sharply disputed whether she made any objection to the conditions additional to those expressly provided for in the listing agreement.

Over the next few days Theriault attempted without success to get a more definitive response from the Dubes to the offer. On Monday, April 16, after turning Theriault away from her door but asking him to call her that evening, Mrs. Dube and her husband left town, spending that night with her niece in Brunswick and then Tuesday night with her sister in Lewiston, not returning to Old Orchard Beach until Wednesday morning, April 18. Unable to contact the Dubes, Theriault went back to Rapaport and Vincent on April 17, the last day of the agreement, and got them to increase their offer to $1.1 million, with no substantive changes in the other terms set forth in their first offer. Theriault left this

offer at the Dubes' home the night of April 17. When Theriault called the Dubes the next day Mrs. Dube told him he was too late with the offer.

Commodities commenced this action on September 20, 1984, seeking recovery of the $69,000 broker's commission provided under the listing agreement. In their answer defendants denied the claim and counterclaimed for rescission of the listing agreement and for attorney fees under the Consumer Solicitation Sales Act, 32 M.R.S.A. §§ 4661–4670 (1978 & Pamph.1986), and the Unfair Trade Practices Act, 5 M.R.S.A. § 213 (1979 & Supp.1987). At the conclusion of the trial held on August 18–21, 1986, the jury found specially for plaintiff that the plaintiff-broker had "produced ready, willing, and able buyers for the property in accordance with the terms authorized by the listing agreement."[1] On the special verdict the court entered a judgment awarding plaintiff the $69,000 broker's fee plus interest and costs and denying defendants' counterclaim. The Dubes appealed in a timely manner to this court.

### I.

▆ Under Maine law a broker earns his commission when he has procured

a prospective purchaser ready, willing and able to purchase the property on the terms and conditions specified by the seller and communicated to the broker at the time of the listing....

*Bowley v. Paine*, 291 A.2d 712, 714 (Me. 1972). *See also Jordan v. McNally*, 124 Me. 216, 220–21, 126 A. 876, 877 (1924). Whether a broker has earned his commission within the terms of the agreement is a question of fact, *Carter v. Beck*, 366 A.2d 520, 522 (Me.1976), and on review we will uphold the verdict if there is credible evidence that would allow the jury rationally to reach the result that it did. *True v. Ladner*, 513 A.2d 257, 265 (Me.1986).

Here the jury specially found as a fact that the broker had produced ready, willing, and able buyers in accordance with the terms authorized by the listing agreement. Since we find the jury's special verdict adequately supported by the trial evidence, we affirm the judgment entered thereon.

▆ Although the April 17 offer by Rapaport and Vincent of $1.1 million included numerous conditions not specifically set out in the listing agreement, that agreement also stated that the commission must be paid if a sale is completed during the listing period "at any other price or terms acceptable to owner." We must affirm the special finding, therefore, if the evidence presented at trial could reasonably allow a jury to find as a fact that, together with the $1.1 million sale price, the additional conditions were "other ... terms acceptable to" the Dubes.

When Theriault presented on April 13 the first offer of $1 million along with the additional conditions not specifically set forth in the listing agreement, Mrs. Dube at that time expressed disappointment with the offered price. A jury could reasonably have concluded, however, that she did not object to the additional conditions. Theriault testified that he had discussed the conditions that would be in the April 13 offer in a general manner with Mrs. Dube at the time she signed the listing agreement:

[I]t seemed all these things were pretty much common in that I suspected that they would show up in any agreement that would be made anyway.... So these are things to get started and it was just items that we had talked about.

He also testified that when he brought her the original offer Mrs. Dube did not object to those specific conditions, did not reject the offer, and expressed disappointment only with the price. Mrs. Dube herself testified that perhaps she had not rejected

---

1. Since we find the Superior Court judgment adequately supported by this special finding, we have no occasion to review the jury's second finding that "plaintiff was prevented from pro-ducing ready, willing and able buyers for the property by the breach of good faith duty of the defendants to the broker."

the conditions "outright" and had not specifically rejected this offer.

From that testimony a jury rationally could infer that the Dubes found acceptable everything in the April 13 offer except the $1 million price, and therefore when Theriault returned on April 17 with the $1.1 million offer and no additional conditions, he had produced an offer at the price established in the listing agreement and with "other ... terms acceptable to [the] owner." Having done so, Commodities had earned the $69,000 commission under the listing agreement.

## II.

■ Defendants also contend that the listing agreement is void because of its failure to comply with the Maine Solicitation Sales Act, 32 M.R.S.A. §§ 4661–4670. That Act allows a consumer to void a contract for the sale of merchandise within three days of executing the agreement if the salesman made an unsolicited first contact with the consumer personally or by phone anywhere other than at the salesman's place of business. Id. § 4663.[2] The statute requires any contract coming within its terms to include a full statement of the consumer's right to avoid. Id. § 4662. Any violation of the Act constitutes as well a violation of Maine's Unfair Trade Practices Act. Id. § 4670. Because of Commodities' failure to include notice of the Dubes' right to avoid the listing agreement, they are seeking equitable relief under the Unfair Trade Practices Act, including rescission of the contract and reasonable attorney fees. See 5 M.R.S.A. § 213(1)–(4).

We reject defendants' contention, however, that exclusive listing agreements between licensed brokers and sellers of real estate come within the scope of Maine's Consumer Solicitation Sales Act. That statute incorporates by reference Maine's Unfair Trade Practices Act, the equitable remedies of which the Dubes are now seeking in their counterclaim. The Unfair Trade Practices Act itself contains the following exception from its scope:

Nothing in this chapter shall apply to:

**1. Regulatory boards.** Transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the State or of the United States; ....

Id. § 208(1).

Under the statutory authority of the State of Maine, the Maine Real Estate Commission regulates the sales efforts of licensed brokers. 32 M.R.S.A. §§ 4051 to 4051–C (1978 & Pamph.1986). The Commission may investigate and penalize licensed brokers who violate the numerous statutory restrictions on their activities. Id. § 4056. These restrictions include standards for listing agreements of the type at issue in this case:

**Expiration of listing contracts; renewals**

All exclusive right-to-sell contracts, exclusive agency contracts and any nonexclusive contract for a residence with 3 or fewer living units made by a real estate broker or salesman to list real estate for sale shall be in writing and shall contain a specific expiration date. If the parties to the contract desire to continue the contract, a new contract must be executed.

Id. § 4004. In addition, the Commission can revoke a broker's license if he "[uses] prices, money, free gifts or other valuable

---

2. The Act defines its relevant terms as follows:

**1. Consumer.** "Consumer" means any person who purchases or contracts for the purchase of merchandise for any purpose, except resale in the ordinary course of trade or business.

**2. Merchandise.** "Merchandise" includes any objects, wares, goods, commodities, intangibles or services.

**3. Person.** "Person" includes any individual, firm, co-partnership, association, society, club, corporation, estate, trust and any agent, employee, salesman, partner, officer, director, member, stockholder or trustee thereof.

**4. Sale.** "Sale" includes any sale, transfer, exchange or barter, offer for sale or attempt to sell any merchandise for cash or on credit. 32 M.R.S.A. § 4661 (1978).

consideration as inducements to ... (b) secure ·clients to list properties with licensees...." *Id.* § 4056(3)(A)(14).

Because by statute. the Maine Real Estate Commission extensively regulates brokers' activities, including the execution of exclusive listing agreements, such activities fall outside the scope of Maine's Unfair Trade Practices Act and Consumer Solicitation Sales Act.[3] We therefore affirm the Superior Court's denial of defendants' counterclaim seeking under the Unfair Trade Practices Act rescission of the listing agreement.

### III.

 Finally, we find no merit in the Dubes' contention that the presiding justice erred in excluding certain evidence and in refusing to give a requested jury instruction. The court properly excluded as irrelevant evidence that Theriault had agreed to split any commission from the Dube sale with Carmen Cretaro, a nonbroker who had introduced him to the Dubes. Commodities does not contest that such an agreement was made or that it is a violation of 32 M.R.S.A. § 4003 (1978).[4] A violation of section 4003 can result in a fine that shall include any compensation received in the transaction, but those moneys recovered as a fine over and above court costs "shall inure to the commission." *Id.* § 4005 (Pamph.1986). Because a violation of section 4003 would not void the Dubes' liability to pay any commission owed but instead would only prevent the brokers from receiving that commission, the presiding jus-

tice properly concluded that evidence of such a violation was irrelevant to the question of the Dubes' liability.

 The presiding justice also properly refused to instruct the jury on a broker's fiduciary obligation to disclose to his principal any possible conflicts of interest the broker may have had in the deal. A judge need not give a requested instruction that is not supported by the facts of the case. *See Schneider v. Richardson,* 438 A.2d 896, 897 (Me.1981). Here defendants failed to present at trial facts sufficient to generate the requested jury instruction on the broker's obligation to reveal to his client any possible conflicts of interest. The Dubes assert that Theriault had an "ongoing economic relationship with Rapaport" that he should have disclosed to the Dubes as a conflict of interest. Testimony at trial on this point, however, revealed only that Theriault and Rapaport had discussed the "possibility" of Theriault's managing the condominium project planned for the Dube land, but that no agreement was made. This testimony, without more, is insufficient to compel the presiding justice to give the requested jury instruction.

The entry is:

Judgment affirmed.

All concurring.

---

3. The Rhode Island Supreme Court has interpreted similarly its own Home Solicitation Sales Act and Deceptive Trade Practices Act. *See Doyle v. Chihoski,* 443 A.2d 1243, 1244 (R.I. 1982). Their Solicitation Sales Act explicitly excludes real estate transactions, yet in ruling that brokers' listing agreements are not within that Act, the *Doyle* court also relied on the exception from their Deceptive Trade Practices Act of transactions regulated by their Department of Business Regulations, such as brokers' listing agreements. *Id. See also State v. Piedmont Funding Corp.,* 119 R.I. 695, 382 A.2d 819, 822 (1978) (insurance contracts not covered by Deceptive Trade Practices Act since that indus-

try is governed by other state regulatory bodies).

4. That statute provides in part:

It shall be unlawful for any licensed broker or salesman to offer, promise, allow, give or pay, directly or indirectly, any part or share of his commission or compensation arising or accruing from any real estate transaction to any person who is not a licensed broker or salesman....

32 M.R.S.A. § 4003. *See also id.* § 4056(3)(A)(15).