STATE OF MAINE                                    BUSINESS AND CONSUMER COURT
CUMBERLAND, ss                                    Location: Portland
                                                  Docket No.: BCD-CV-15-39        ✓

                                          )
GLENN E. PERRY & MARY JANE                )
PERRY,                                    )
                                          )
                                          )        **Order on Defendant's Motion for Partial**
                  Plaintiffs,             )        **Summary Judgment**
                                          )
        v.                                )
                                          )
THE NETHERLANDS INSURANCE                 )
COMPANY,                                  )
                                          )
                  Defendant.              )


        Plaintiffs Glenn E. Perry and Mary Jane Perry assert seven causes of action against The

Netherlands Insurance Company ("The Netherlands") in their Amended Complaint. The

Netherlands moves for summary judgment against five of these counts.[1] Specifically, they seek

summary judgment against: Count III Overdue Payments under 24-A M.R.S.A. § 2436;[2] Count

III Unfair Claims Settlement Practices under 24-A M.R.S.A. § 2436-A; Count IV Negligent

Infliction of Emotional Distress; Count V Intentional Infliction of Emotional Distress; and Count

VI Unfair Trade Practices Act, 5 M.R.S.A. §§ 207, 213. The Netherlands also moved for

summary judgment against Plaintiffs' request for punitive damages.

        The Court held oral argument on this motion and three motions in limine on May 16,

2015. For the reasons discussed below, the Court grants summary judgment against Count III

for overdue payments under 24-A M.R.S.A. § 2436, Count IV for negligent infliction of

---

[1] Although raised as an issue in The Netherlands' initial motion for summary judgment, the parties have
since agreed that Plaintiffs' potential recovery under the terms of The Netherlands' policy is limited to
$200,000 in light of an earlier settlement for $50,000 eroding the $250,000 policy limits.
[2] Plaintiffs mistakenly numbered two causes of action as "Count III." For the sake of simplicity, the
Court refers to these counts based on the statute allegedly violated.

emotional distress, Count V for intentional infliction of emotional distress, Count VI for violation of the Unfair Trade Practices Act, and against Plaintiffs' request for punitive damages. The Court grants in part and denies in part The Netherlands motion for summary judgment against Count III for unfair claims settlement practices under 24-A M.R.S.A. § 2436-A. More specifically, the Court grants summary judgment against Plaintiffs' claims pursuant to 24-A M.R.S.A. § 2436-A(1)(E), but denies summary judgment against Plaintiffs' claims brought under 24-A M.R.S.A. § 2436-A(1)(B) & (D).

## I. Background

On October 23, 2013, plaintiff Glen Perry was in a vehicular accident. (Supp. S.M.F. ¶ 1.) Mr. Perry's vehicle was rear ended by a vehicle driven by Hannah Oriol, who was insured by Progressive Insurance ("Progressive"). (*Id.* ¶ 2.) Mr. Perry sustained a large cut on his head in the accident that required thirteen staples. (*Id.* ¶ 3; Opp. S.M.F. ¶ 3.) At the time of the accident, Mr. Perry was employed by Mariner Beverages ("Mariner") and the accident occurred while he was performing work duties for the company. (Supp. S.M.F. ¶ 4.) Two days after the accident, Mr. Perry returned to work. (*Id.* ¶ 5.) In April 2014, Progressive agreed to pay Mr. Perry the $50,000 policy limits on Ms. Oriol's policy in full and final settlement of the claims against Ms. Oriol. (*Id.* ¶ 6.)

At the time of the accident, Mr. Perry had a motor vehicle policy with The Netherlands Insurance Company ("The Netherlands") that included uninsured motorist coverage with limits of $250,000. (*Id.* ¶ 7.) By late November 2013, Mr. Perry was in contact with a person representing The Netherlands.[3] (A.S.M.F. ¶ 8.) Mr. Perry sent the representative evidence as to

---

[3] At oral argument, counsel for the parties explained that although there were a number of insurance companies involved in addition to The Netherlands, for purposes of the present motion, they could all be treated as The Netherlands.

the value of his destroyed vehicle as well as photos depicting the thirteen staples that were placed in his head. (*Id.*)

On April 8, 2014, Mr. Perry's attorney, John Campbell, notified The Netherlands that Progressive had agreed to settle Mr. Perry's claims against Ms. Oriol for the $50,000 policy limits and requested The Netherlands' consent. (Supp. S.M.F. ¶ 8.) That same day, Attorney Campbell put The Netherlands on notice that Mr. Perry would be making an uninsured motorist claim over and above the amount paid by Progressive against The Netherlands. (*Id.* ¶ 9.) There were no demand or medical records provided to The Netherlands on that date. (*Id.* ¶ 10; A.S.M.F. ¶ 9.) Mr. Perry did, however, send The Netherlands two photographs depicting his head a few days after the accident when the bandages were taken off, plus a third picture depicting the permanent trough that is now in Mr. Perry's head. (*Id.*) On or about April 5, 2014, Mr. Perry advised The Netherlands that he was still suffering mental health issues from the effects of his head injury and was scheduled to see a neurologist in June of 2014. (A.S.M.F. ¶ 11.)

On April 8 and 9, adjusters representing The Netherlands made written requests that Attorney Campbell provide them with a letter of representation, the police report, a demand package, all of the medical records and bills, the declarations page of Ms. Oriol's policy, and an affidavit stating that there was no additional insurance. (Supp. S.M.F. ¶ 11.) Mr. Perry asserts that he and Attorney Campbell subsequently had numerous and repeated calls about his claim with various people representing various insurers who were acting on behalf of The Netherlands. (Perry Aff. ¶ 22.) Mr. Perry asserts that he promptly supplied all information that was requested. (*Id.* ¶ 23.) However, as of August 25, 2014, none of the additional information requested by The Netherlands on April 8 and 9, 2014, was provided. (Supp. S.M.F. ¶ 12.)

3

On August 25, 2014, adjuster Emily Mousette was assigned to the file. (*Id.* ¶ 13.) On that day, Ms. Mousette spoke with Attorney Campbell by phone and wrote to him confirming that she had been assigned to the file. (*Id.* ¶ 14.) Ms. Mousette's writing also requested: i) a formal letter of representation; ii) a copy of the declarations page of the Progressive policy; iii) the settlement agreement and release with Progressive; iv) confirmation that there was no other insurance; v) information about workers compensation coverage and coverage from Mr. Perry's employer's policy; and vi) Mr. Perry's medical bills, records related to the accident, and pre-accident medical records. (*Id.*)

On September 19, 2014, Attorney Campbell e-mailed Ms. Mousette and attached copies of: i) a medical bill from Maine Health in the amount of $1,680.70; ii) a bill from Westbrook Fire Department for $779.60; iii) Intermed records from November 7, 2013 and November 15, 2013; iv) a medical record form Dr. Dinnerstein dated June 6, 2014; v) a letter from Progressive; vi) the declarations page from Ms. Oriol's policy showing limits of $50,000; vii) letters from Progressive confirming the settlement; viii) a copy of Progressive's $50,000 check to Mr. Perry; and ix) a statement from Philip Williams dated September 15, 2014. (*Id.* ¶ 15.)

On October 7, 2014, Ms. Mousette took a recorded statement from Mr. Perry over the telephone with Attorney Campbell present. (*Id.* ¶ 16.) On that date, Attorney Campbell informed Ms. Mousette, for the first time, that he considered Mr. Perry's case a policy limits case. (*Id.* ¶ 18.) Ms. Mousette responded on the seventh that in order to evaluate Mr. Perry's claim, The Netherlands needed to know whether there was coverage for Mr. Perry under Mariner's commercial auto policy and questioned why Mr. Perry had not made a workers compensation claim since the injury was work related. (*Id.* ¶ 17.) In connection therewith, Ms. Mousette offered to call Mariner to start the process of requesting an opinion on whether its

4

commercial automobile insurance policy had coverage for the accident. (*Id.* ¶ 19; Answer to Amended Compl. ¶ 33.)[4]

On October 20, 2014, Ms. Mousette responded to an email from Attorney Campbell sent earlier in the day explaining that "I have not yet been able to reach out to [Mariner], it is on my to do list." (Answer to Amended Compl. ¶¶ 35-36.[5]) Attorney Campbell sent Ms. Mousette a further email on October 27, to which Ms. Mousette responded the following day:

> So the process has been started with both workers comp and the commercial auto for Mariner Beverage. I will have to wait to see how their coverages apply, if they will, and how that will effect our UIM policy in the settlement of this claim.
>
> I appreciate your cooperation and patience in resolving this claim. Let me know if you have any questions or need anything from me at this time.
>
> I will be in touch with a status update as soon as I have one....

(*Id.* ¶ 37.)

On October 29, 2014, Attorney Campbell emailed Ms. Mousette asking how Mariner's commercial automobile policy could affect settlement because it was "excess" and stating that he did not understand how the workers compensation policy could come

---

[4] There appears to be a disputed issue of fact as to when Attorney Campbell told Ms. Mousette she could directly contact Mr. Perry's employer, Mariner. Plaintiffs admit in their opposing statement of material facts that Attorney Campbell approved Ms. Mousette's request to reach out to Mariner on October 14, 2014. (Supp. S.M.F. ¶ 19.) The Netherlands admit in their Answer to Plaintiffs' Amended Complaint, however, that Attorney Campbell approved Ms. Mousette's plan on October 7, 2014. (Answer to Amended Compl. ¶ 34.) For purposes of the present motion, the seven-day discrepancy is not material.
[5] Plaintiffs' Additional Statement of Material Facts contains numerous conclusory assertions and characterizations that do not satisfy the short and concise statement of facts required by M.R. Civ. P. 56(h). *See e.g. Orient v. Dwyer*, 490 A.2d 660, 662 (Me. 1985). Furthermore, Plaintiffs' Additional Statement of Material Facts rely heavily on the affidavit of Mr. Perry in which he recounts communications between Attorney Campbell and Ms. Mousette. (*See* A.S.M.F. ¶¶ 15-20). Mr. Perry's affidavit, however, does not establish personal knowledge of these communications and they are therefore inadmissible hearsay. (*See e.g.* Perry Aff. ¶¶ 28-57.) While the Court has no independent duty to search or consider any portion of the record not specifically referenced in the parties' separate statement of facts, it is not prohibited from doing so. M.R. Civ. P. 56(h)(4).) In the interests of justice, the Court has elected to consider The Netherlands' Answer to Plaintiffs' Amended Complaint, in which The Netherlands admits to the substance of many of the Statements of Material Facts that are otherwise inadmissible hearsay. The Court does not take this step lightly, but deems it necessary to provide a complete picture of the undisputed facts at issue in the present case.

into play at all. (*Id.* ¶ 38.) Ms. Mousette responded on November 2, 2014 that The Netherlands had to "evaluate all potential coverages available to the insured, including all applicable collateral sources and what we may have to be prepared for in terms of liens, etc." (*Id.* ¶ 39.) She stated that she would let Attorney Campbell know as she receives more information from Mariner about how its insurance coverage "will integrate with ours." (*Id.*)

On November 4, 2014, Attorney Campbell emailed Ms. Mousette reiterating that Mr. Perry never commenced a workers compensation claim and that, in his opinion, there could be no lien. (*Id.* ¶ 41.) He also wrote Ms. Mousette that Maine law provides remedies for delaying payment under insurance policies and for failing to effectuate a fair settlement when liability is reasonably clear. (*Id.*) Ms. Mousette responded on November 13, 2014 apologizing for the delay and explaining that she was still waiting to hear back about the potential commercial automobile coverage. (*Id.* ¶ 42.) She stated that The Netherlands needs to "clarify any potential coverage issues as far as who would be primary and/or excess before we can finalize the settlement" and expressed concern "as to why Mr. Perry did not file a workers compensation claim for his medical bills and pending disability issues." (*Id.*) She assured Attorney Campbell that she did not intend to delay a settlement, but had to follow protocols, was working on the file, and hoped to resolve the matter promptly. (*Id.*)

The following day, Attorney Campbell e-mailed Ms. Mousette asking for a copy of the Mariner policy and questioning how far along she was in her discussions regarding the resolution of Mr. Perry's claims. (*Id.* ¶ 43.) Attorney Campbell also posed further questions about the workers compensation issue, inquiring whether Mr. Perry had to

6

"needlessly attempt to commence a comp proceeding at this point in order to recover what you describe as 'out of pocket expenses' as a precondition to recovering the benefits that he is contractually entitled to under his...policy." (*Id.*) Ms. Mousette responded on November 21, 2014 that she had not yet received a copy of the Mariner's policy. (*Id.* ¶ 45.)

On November 24, Attorney Campbell e-mailed Ms. Mousette expressing surprise and disappointment that she had not obtained the commercial policy from Mariner and requested the name of her supervisor. (Supp. S.M.F. ¶ 24.) Ms. Mousette replied on the same day, explaining that she hoped to hear back from Mariner soon and that her supervisor was aware of the missing information. (*Id.* ¶ 25.) Ms. Mousette also provided her supervisor's name and copied her to the email. (*Id.*) Attorney Campbell emailed Ms. Mousette and her supervisor on December 1, 2014 asking whether they had received a copy of the Mariner policy and asking whether that is the missing information referenced in Ms. Mousette's November 24 email. (*See id.* ¶ 26; Answer to Amended Compl. ¶ 48.) The following day, Ms. Mousette responded that she had not received the contact information for the claims adjuster for the Mariner commercial automobile policy, but hoped to have it by the end of the week. (Answer to Amended Compl. ¶ 49.) Ms. Mousette explained that there may have been a misunderstanding when she first contacted the agent for Mariner in October and that the agent had put in notice of the possible workers compensation claim after their first conversation, but had only recently put in the commercial automobile claim. (*Id.*) That same day, Ms. Mousette's supervisor wrote her stating, "Can you also send the agent a written letter requesting claim (sic) created for auto policy and written position of coverage available for insured?" (*Id.* ¶ 50.)

7

Thereafter, Mr. Perry and Attorney Campbell reached out to Mariner's insurer and received a letter dated December 9, 2014 denying coverage because Mariner did not own the vehicle that was involved in the accident . (*Id.* ¶ 52; Supp. S.M.F. ¶ 27.) Ms. Mousette received a copy of this letter on December 10, 2014. (Supp. S.M.F. ¶ 27.) Ms. Mousette responded to a December 11, 2014 e-mail from Attorney Campbell later that day stating she was completing her evaluation of Mr. Perry's claim. (*Id.* ¶ 28.) Ms. Mousette included in her email a list of all the medical bills she had and requested that Attorney Campbell confirm there were no more. (*Id.*) She also sent out an internal request for other adjusters to participate in a roundtable to discuss the value of Mr. Perry's claims. (*Id.*) Attorney Campbell confirmed on December 15 that there were no more bills since those supplied in September. (*Id.* ¶ 30.)

Sometime shortly after December 10, 2014, the roundtable discussion with other insurance adjusters took place. (*Id.* ¶ 29.) Some of the adjusters opined that the value of Mr. Perry's claim was less than the $50,000 settlement he had received, while none thought the value approached limits of The Netherlands' policy. (*Id.*) In making their decision, the adjusters considered Mr. Perry's significant cut, the photos and scarring, the minimal medical treatment and bills, the two-day absence from work, and the claim of a traumatic brain injury. (*Id.*) The adjusters felt that the traumatic brain injury claim was not substantiated and that the claim of a lost job opportunity was speculative. (*Id.*)

On December 16, 2014, Ms. Mousette e-mailed her supervisor with her evaluation, intending to obtain settlement authority and begin settlement negotiations. (*Id.* ¶ 31.) The following day, Ms. Mousette went into labor a month before her expected due date and went on short-term disability. (*Id.* ¶ 32.) Mr. Perry did not submit a written settlement demand or a proof of loss to The Netherlands and Mr. Perry's claim was never arbitrated. (*Id.* ¶¶ 33-35.)

8

On December 23, 2014, Attorney Campbell emailed Ms. Mousette asking when he could expect a response. (Answer to Amend. Compl. ¶ 56.) On that same day, Matthew Szymanoski was assigned to handle Mr. Perry's claim. (Supp. S.M.F. ¶ 36.) Mr. Szymanoski emailed Attorney Campbell on the 23rd informing him of this. (*Id.* ¶ 37.) Mr. Szymanoski also asked Attorney Campbell to provide the ambulance trip report, ER records, PCP records and neurologist records. (*Id.*) In the same email, Mr. Szymanoski provided Attorney Campbell with his contact information and told him that he was reachable that week, but would be out the last week of the year, returning on January 5, 2015. (*Id.* ¶ 38.) While Mr. Szymanoski was out on vacation, he received internal emails about Mr. Perry's claim and an e-mail from Attorney Campbell. (*Id.* ¶ 40.) On January 7, 2015, Mr. Syzmanoski contacted Attorney Campbell and told him he needed to go through the information. (*Id.* ¶ 41.) Attorney Campbell stated that he understood and would be in touch. (*Id.*)

Thereafter, Mr. Szymanoski looked at the materials in the file, including those provided by Attorney Campbell and the evaluations. (*Id.* ¶ 42.) Mr. Syzmanoski considered: i) Mr. Perry's injury and scar; ii) the limited medical treatment and low medical bills of approximately $2,400; iii) Mr. Perry's claim of a brain injury and the lack of a substantiating neurologist's report; and iv) Mr. Perry's claim of a lost job opportunity. (*Id.* ¶ 43.) On January 12, 2015, Mr. Szymanoski spoke with Attorney Campbell by phone to discuss the case and The Netherlands' evaluation. (*Id.* ¶ 44.) During the call, he told Attorney Campbell that he thought the $50,000 his client had received was the full value of the case, but also offered an additional $3,000 in new money to settle the claim. (*Id.*) Attorney Campbell responded that he saw the case as a full policy limits case. (*Id.* ¶ 45.) Mr. Syzmanoski disagreed with Attorney Campbell's opinion, but indicated that he was willing to continue to discuss the case. (*Id.* ¶ 46.) On March 13, 2015, Mr.

Szymanoski offered $10,000 to settle Mr. Perry's claims. (A.S.M.F. 42.) On March 19, 2015, he upped the settlement offer to $15,000. (*Id.*) The offers were not accepted.

While Mr. Szymanoski worked on the case, he had some of the medical information requested, but never received a written demand package, a copy of the record of Mr. Perry's post-accident C.T. scan, the rescue records—excluding the rescue bill—or the neurologist's bills. (Supp. S.M.F. ¶ 47.) The bills Mr. Szymanoski was in possession of totaled approximately $2,400. (*Id.*)

## II.    Standard of Review

"The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question[s] before the court [are] solely...of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 1144 (Me. 1995). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. A "material fact" is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a fact finder to choose between competing versions of the fact. *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶11, 48 A.3d 774.

Summary judgment is also appropriate if, looking at the record in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, no reasonable juror could find for the non-moving party. *Id.* ¶ 14, n. 3 (quoting *Scott v. Harris*, 550 U.S. 372, 377 (2007)). This is true "even when concepts such as motive or intent are at issue...if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Dyer. v. Dep't. of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821 (quoting

*Vives v. Fajardo*, 472 F.3d 19, 21 (1st Cir. 2007)); *Bouchard*, 661 A.2d at 1144-45 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted"). Accordingly, a "judgment as a matter of law in a defendant's favor is proper when any jury verdict for the plaintiff would be based on conjecture or speculation." *Stanton v. Univ. of Maine System*, 2001 ME 96, ¶ 6, 773 A.2d 1045.

### III. Discussion

#### A. Whether Summary Judgment is Warranted Against Plaintiffs' Claim for Violation of the Late Payment Statute, 24-A M.R.S.A. § 2436.

The Netherlands argues that summary judgment is warranted because Mr. Perry did not trigger Section 2436's 30 day deadline for payment since he did not provide proof of loss to The Netherlands, and there was no ascertainment of the loss through written agreement or arbitration. In the alternative, The Netherlands argues that even if the 30 day period was triggered, its payments are not overdue because Plaintiffs failed to produce all of the requested information and, even if Plaintiffs had provided the information, The Netherlands made an offer of settlement within 30 days of receiving sufficient information.

Plaintiffs respond that, in essence, The Netherlands seeks to exempt itself from 24-A M.R.S.A. § 2436 by not providing the Plaintiffs a "proof of loss" form to submit. They argue that the filing of a particular form is not what the statute requires. Instead, the "proof of loss" that is required is the equivalent of what might be on a proof of loss form, i.e. the essential information about the loss. Plaintiffs further respond that they provided "proof of loss" on April 8, 2014, or at the latest by October 7, 2014. The Netherlands, however, did not agree to pay the claim, dispute it, or request reasonable additional information from the Plaintiffs to toll the 30-

11

day period. Instead, Plaintiffs argue that The Netherlands deliberately delayed its determination to their prejudice.

Subsection 1 of Section 2436 provides, in pertinent part:

> A claim for payment of benefits under a policy or certificate of insurance delivered or issued for delivery in this State is payable within 30 days after proof of loss is received by the insurer and ascertainment of the loss is made either by written agreement between the insurer and the insured or beneficiary or by filing with the insured or beneficiary of an award by arbitrators as provided for in the policy. For purposes of this section, "insured or beneficiary" includes a person to whom benefits have been assigned. A claim that is neither disputed nor paid within 30 days is overdue. If, during the 30 days, the insurer, in writing, notifies the insured or beneficiary that reasonable additional information is required, the undisputed claim is not overdue until 30 days following receipt by the insurer of the additional required information....

24-A M.R.S. § 2436(1). A violation of this statute results in the overdue claim bearing interest at the rate of 1 ½% per month and an award of reasonable attorney's fees for representing a claimant on an overdue claim. *Id.* § 2436(3-4). Nothing in Section 2436 prohibits or limits any claim or action a claimant has against the insurer. *Id.* § 2436(5).

When interpreting a statute, the Court seeks "to give effect to the intent of the Legislature by examining the plain meaning of the statutory language and considering the language in the context of the whole statutory scheme." *Darling's v. Ford Motor Co.*, 1998 ME 232, ¶ 5, 719 A.2d 111 (citations omitted). The Court interprets "the plain language by taking into account the subject matter and purposes of the statute, and the consequences of a particular interpretation." *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 21, 107 A.3d 621 (citation omitted). In determining a statute's practical operation and potential consequences, the Court "may reject any construction that...creates absurd, illogical, unreasonable, inconsistent, or anomalous results if an alternative interpretation avoids such results." *Id.* (quotation omitted). Similarly, the Court may reject interpretations that render some language mere surplusage or result in duplicative recoveries for

12

the same injuries. *Id.* ¶ 22 (citation omitted); *Edwards v. Travelers Ins. Co.*, 2001 ME 148, ¶ 10, 783 A.2d 163 (disfavoring interpretations of the Workers' Compensation Act that result in duplicate recovers for the same injuries). Because Section 2436 is a penal in nature, it must be strictly construed. *See Marquis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 651 (Me. 1993).

The first sentence of subsection 1 of Section 2436 triggers the commencement of the 30 day period following: 1) submission to the insurer of proof of loss, *and* 2) ascertainment of the loss by written agreement between the insurer and the insured or by filing an award by arbitrators. 24-A M.R.S.A. § 2436(1). While the statute also imposes liability for an insurer's failure to dispute or pay a claim within 30 days without expressly mentioning the prerequisites of submitting proof of loss and ascertainment of the loss; a strict construction of Section 2436 requires the Court to read these prerequisites into the term "claim" order to trigger the 30 day period. This interpretation is further supported by 24-A M.R.S.A. § 2436-A, which provides the same penalties for virtually the same injuries. 24-A M.R.S.A. § 2436-A(1)(B) (permitting the recovery of damages, costs, reasonable attorney's fees and 1 ½% interest per month against an insurer that fails to acknowledge and review claims within a reasonable time following receipt of written notice from the insured).

Here, there is no evidence that Plaintiffs have satisfied the prerequisite of ascertaining the loss by written agreement between themselves and The Netherlands or through an arbitration award. Accordingly, there is no evidence that the 30 day period was triggered and summary judgment is warranted against Plaintiffs' claim for the violation of 24-A M.R.S.A. § 2436.

13

B. Whether Summary Judgment is Warranted Against Plaintiffs' Claim for Violation of Unfair Claims Settlement Practices Statute, 24-A M.R.S.A. § 2436-A.

The Netherlands argues that summary judgment must be granted because it timely acknowledged and reviewed Plaintiffs' claim. The only point of contention, The Netherlands argues, stems from the fact that it evaluated the damage claim differently than Plaintiffs. This differing valuation, The Netherlands argues, does not constitute a violation of the Unfair Claims Settlement Practices Statute.

Plaintiffs respond that there are genuine issues of material fact as to whether The Netherlands violated subsections (B), (D), and (E) of Section 2436-A.[6] For instance, a reasonable jury could find either that The Netherlands delay was due to matters outside its control, such as Mousette's pregnancy, *or* that the delays were intentional or stemming from The Netherlands' negligence. Plaintiffs further respond that liability was reasonably clear, and strong evidence indicates Mr. Perry's damages were greater than the $50,000 paid by Progressive.

Section 2436-A provides, in pertinent part:

A person injured by any of the following actions taken by that person's own insurer may bring a civil action and recover damages, together with costs and disbursements, reasonable attorney's fees and interest on damages at the rate of 1 1/2% per month:

B. Failing to acknowledge and review claims, which may include payment or denial of a claim, within a reasonable time following receipt of written notice by the insurer of a claim by an insured arising under a policy;
...
D. Failing to affirm or deny coverage, reserving any appropriate defenses, within a reasonable time after having completed its investigation related to a claim; or
E. Without just cause, failing to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear.

---

[6] Plaintiffs cite to subsection (1)(A) of Section 2436-A, but discuss the merits of subsection (1)(B).

14

24-A M.R.S. § 2436-A(1). "For the purposes of this section, an insurer acts without just cause if it refuses to settle claims without a reasonable basis to contest liability, the amount of any damages or the extent of any injuries claimed." 24-A M.R.S.A § 2436-A(2). Nothing in section 2436 "prohibits any other claim or cause of action a person has against an insurer." 24-A M.R.S.A. § 2436-A(3). Section 2436-A, like Section 2436, is penal in nature and must be strictly construed. *Grich v. Anthem Health Plans of Maine.*, 2007 Me. Super. LEXIS 101, *5-6 (May 18, 2007); *Anderson v. CIGNA Healthcare of Maine*, 2005 Me. Super. LEXIS 139, *11-12 (Oct. 27, 2005).

Here, viewing the evidence in the light most favorable to Plaintiffs, there are genuine issues of material fact as to whether The Netherlands violated subsections (B) and (D) of Section 2436-A(1). Specifically, a reasonable juror could conclude that The Netherlands: (B) failed to acknowledge and review Mr. Perry's claims within a reasonable time following receipt of Mr. Perry's written notice; and (D) failed to affirm or deny coverage within a reasonable time after completing its investigation into Mr. Perry's claim. This is because Mr. Perry provided The Netherlands with written notice in early April of 2014. (Supp. S.M.F. ¶ 9.) By October 7, 2014, Plaintiffs had provided Ms. Mousette with what a reasonable juror could conclude constituted sufficient information for The Netherlands to review Mr. Perry's claim and begin making a coverage decision. (*See* Supp. S.M.F. ¶¶ 15-16.) While The Netherlands maintain that it was diligently searching for and waiting on additional pertinent information, such as Mariner's insurance policy, a reasonable juror could determined that this policy was unnecessary for The Netherlands to reach a coverage opinion. (*See id.* ¶¶ 17-19; Answer to Amended Compl. ¶¶35-38.) Furthermore, there is sufficient information for a reasonable juror to conclude that even if The Netherlands required the Mariner insurance policy to reach a decision, it was not diligent in

15

tracking down this information. (Answer to Amended Compl. ¶¶ 35-45, 49; Supp. S.M.F. ¶¶ 24-27.) Finally, there is sufficient information for a reasonable juror to conclude that even if The Netherlands was diligent in its pursuit of the Mariner insurance policy, The Netherlands was not diligent in reviewing and reaching a coverage position until January 12, 2015. (*See* Supp. S.M.F. ¶¶ 27-44.)

Summary judgment is warranted, however, against Plaintiffs' claim pursuant to Section 2436-A(1)(E) because no reasonable juror could find that The Netherlands did not have a reasonable basis to dispute the amount of damages and the extent of injuries claimed by Mr. Perry. (Supp. S.M.F. ¶¶ 42-46; A.S.M.F. ¶ 42.) This is highlighted by the discrepancy between Mr. Perry's request for the $200,000 policy limits of The Netherlands policy and the limited medical bills (approximately $2,400), lack of a substantiating neurologist's report for Mr. Perry's claimed brain injury, and Mr. Perry's quick return to work. (*Id.* at ¶¶ 29, 43, 45.) The fact that a reasonable juror could conclude The Netherlands was not diligent in reaching this determination is not pertinent to liability under subsection E. *See Curtis v. Allstate Ins. Co.*, 2002 ME 9, ¶¶ 32-33, 787 A.2d 760.

### C. Whether Summary Judgment is Warranted Against Plaintiffs' Claim for Negligent and Intentional Infliction of Emotional Damage

The Netherlands argue that it is entitled to summary judgment because Plaintiffs' claims arise out of the contractual terms of The Netherlands' policy and it is well established that damages for emotional distress are not available for a breach of contract, absent certain circumstances not present in this case. The Netherlands further contends that summary judgment is warranted against the negligent infliction of emotional distress claim because there is no evidence of the requisite special relationship or "bystander liability." Finally, The Netherlands

16

argue that summary judgment is warranted against the intentional infliction of emotional distress claim because the conduct alleged is not outrageous enough to support the tort as a matter of law.

Plaintiffs respond that their claims go beyond a simple breach of contract to include claims for unfairly and maliciously delaying a settlement offer to Mr. Perry and making him jump through hoops for a minimal settlement offer. They also respond that they have at least created an issue of fact as to whether The Netherlands recklessly inflicted emotional harm on Plaintiffs.

"As a general rule, in order to recover for mental or emotional distress suffered as a result of a breach of contract, the plaintiff must suffer some accompanying physical injury, or the contract must be such that a breach of it will result in a serious emotional disturbance, such as contracts between carriers and innkeepers, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death." *Marquis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 651 (Me. 1993) "[A]n insurance contract is not one of those 'special' types of contracts warranting damages for a severe emotional disturbance...." *Id.*

In *Marquis*, the plaintiffs brought suit against Farm Family Mutual Insurance Company ("Farm Family") for breach of two fire insurance contracts. *Id.* at 646. At trial, a jury determined, among other things, that Farm Family investigated the fire claims in bad faith and that the plaintiffs were entitled to recover for the loss of personal property insured under the policy and consequential damages. *Id.* at 647. Thereafter, Farm Family moved for a judgment notwithstanding the verdict to which the trial court determined plaintiffs: 1) were not entitled to recover interest and attorney fees under 24-A M.R.S.A. § 2436, 2) were not entitled to recover under 24-A M.R.S.A. § 2436-A because they had not pled the claim, and 3) had not presented sufficient evidence to recover for lost profits. *Id.* The parties cross-appealed and the Law Court

17

determined, in pertinent part, that: 1) the jury had sufficient evidence to determine Farm Family breached the implied duty of good faith and fair dealing an insurer owes to its insured (*Id.* at 648-49); 2) the trial court correctly dismissed plaintiffs' requests for severe emotional distress because plaintiffs did not suffer any physical injury and the claim arose out of an insurance contract (*Id.* at 651); and 3) it would not recognize an independent tort of bad faith resulting from an insurer's breach of its duty to act in good faith and deal fairly with an insured (*Id.* at 652).

The present case is similar to *Marquis* in that it stems from The Netherlands alleged breach of its duty to act in good faith and deal fairly with Plaintiffs. Furthermore, the Plaintiffs' claim does not allege physical injury and is not a special type of contract that warrants damages for a severe emotional disturbance. Accordingly, summary judgment is warranted against Counts IV and V of Plaintiffs' Complaint. *See also Colford v. Chubb Life Ins. Co. of Am.*, 687 A.2d 609, 616-17 (Me. 1996) (requiring commission of independently tortious conduct beyond the breach of an insurance contract); *Osgood v. York Ins. Co.*, 2006 Me. Super. LEXIS 136, *20-21 (June 5, 2006) (no claim for intentional infliction of emotional distress where insurer delayed and eventually denied claim of insurance coverage).

### D. Whether Summary Judgment is Warranted Against Plaintiffs' Claim for Violation of the Unfair Trade Practices Act

The Netherlands argues that summary judgment is warranted because Section 208 of the Unfair Trade Practices Act ("UTPA") exempts insurance companies from liability thereunder. In support, The Netherlands points to *Lessard v. Allstate Ins. Co.*, which concluded that "insurance companies' practices are exempt from the UTPA" because "[t]he business of insurance is heavily regulated by the State of Maine through Title 24-A. 2001 Me. Super. LEXIS 36, *10-11 (Mar. 12, 2001). The Netherlands further argues that even if it could be held liable under the UTPA, there is no evidence that it engaged in an unfair method of competition or

18

deception or that Plaintiffs suffered any loss of money or property as a result thereof. The Netherlands also argues that Plaintiffs cannot recover attorney fees under the UTPA because they did not comply with the Act's notice requirement. Plaintiffs respond that the present action does not involve "transactions or actions...permitted" under Maine's laws.

          1. <u>Whether The Netherlands is Exempt From Liability Under the UTPA</u>

Section 207 of the UTPA declares unlawful any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce...." 5 M.R.S.A. § 207 (2016). When *Lessard* was decided, Section 208 of the UTPA provided, in pertinent part, that that it does not apply to "transactions or actions otherwise permitted under laws as administered by any regulatory board...acting under statutory authority...." 5 M.R.S.A. § 208(1) (2000). In interpreting this language, *Lessard* looked to state and federal case law for guidance in determining whether the plaintiff could proceed with his UTPA claim against the defendant insurance company. 2001 Me. Super. LEXIS 36, *8-11. Specifically, *Lessard* examined the Law Court's opinion in *First of Maine Commodities v. Dube*, 534 A.2d 1298 (Me. 1987) and two opinions from the federal district court of Maine. *Id.* at *8-10. In *Dube*, the plaintiffs argued that the defendant real estate broker violated the UTPA by failing to notify them of their right under another statute to void the parties' exclusive listing agreement within three days of its execution. 534 A.2d at 1301. *Dube* observed that the Maine Real Estate Commission "may investigate and penalize licensed brokers who violate the numerous statutory restrictions on their activities." *Id. Dube* concluded that "[b]ecause the Maine Real Estate Commission extensively regulates brokers' activities, including the execution of exclusive listing agreements, such activities fall outside the scope of" the UTPA. *Id.* Based on the text of Section 208, *Dube*, and two decisions from the federal district of Maine, *Lessard* concluded that "insurance

19

companies' practices are exempt from the UTPA" because "[t]he business of insurance is heavily regulated by the State of Maine through Title 24-A. 2001 Me. Super. LEXIS 36, *10-11.

In 2007, the Legislature amended Section 208 to "establish[] a 2-step analysis to determine if a defendant's transactions or actions are exception from the application of the [UTPA]." Comm. Amend. A. to L.D. 94, No. H-240 (123rd Legis. May 15, 2007). Following this amendment, Section 208 now provides:

Nothing in this chapter shall apply to:

**1. Regulatory Boards.** Transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the State or of the United States. This exception applies only if the defendant shows that:
    A. Its business activities are subject to regulation by a state or federal agency; and
    B. The specific activity that would otherwise constitute a violation of this chapter is authorized, permitted or required by a state or federal agency or by applicable law, rule or regulation or other regulatory approval.

5 M.R.S. § 208 (2015).

When interpreting a statute, the Court seeks "to give effect to the intent of the Legislature by examining the plain meaning of the statutory language and considering the language in the context of the whole statutory scheme." *Darling's*, 1998 ME 232, ¶ 5, 719 A.2d 111 (citations omitted). Only when a statute is ambiguous should the Court look beyond the plain language of the statute and the context of the statutory scheme "to indicia of legislative intent such as the statute's history and its underlying policy." *Fuhrmann v. Staples*, 2012 ME 135, ¶ 23, 58 A.3d 1083 (quotation omitted). "A statute is ambiguous if it is reasonably susceptible to different interpretations." *Id.* (quotation omitted).

Since Section 208 was amended in 2007, the federal district court of Maine has adopted a different interpretation than the one relied upon in *Lessard*. For example, *Campbell v. First Am. Title Ins. Co.* determined that Section 208 did not exempt a title insurer accused of violating 24-

20

A M.R.S.A. § 2316 from the UTPA because Section 208 only exempted transactions that were otherwise permitted by law, and 24-A M.R.S.A. § 2316 explicitly prohibited the challenged conduct. 644 F. Supp. 2d 126, 133-34 (D. Me. 2009). Implicit in this determination is the conclusion that the "actions otherwise permitted" refer to the specific actions taken, as opposed to the general category within which the actions can be grouped. In other words, *Campbell* would frame the action at issue in the present case as The Netherlands' allegedly dilatory handling of Mr. Perry's claim, while it could be argued that *Dube* would have framed the action as The Netherlands' analyzing and adjusting Plaintiffs' claim. To the extent *Dube's* interpretation under an earlier version of Section 208 creates ambiguity, the Court examines the statute's legislative history.

The 2007 Amendment to Section 209 makes clear that, consistent with *Campbell*, the "actions otherwise permitted" focuses on whether the "specific activity that is the focus of the inquiry is authorized, permitted or required by...applicable law...." Comm. Amend. A. to L.D. 94, No. H-240 (123rd Legis. May 15, 2007); *see also An Act to Protect Consumer Rights under the Maine Unfair Trade Practices Act: In Support of L.D. 94 Before the J. Standing Comm. on Judiciary*, 123rd Legis. (Feb. 1, 2007) (testimony of Linda Conti for the Office of Attorney General arguing that the UTPA exception "extends only to practices permitted by regulation" and does not preclude its application "to any conduct generally regulated by other laws..."), (testimony of Michael Bigos, as Chair of the Maine Trial Lawyers Association, arguing that the Legislature should "[e]xplain that specific permission or authorization for a particular trade practice is required to qualify for an exception, and not just 'extensive regulation' in the subject matter area of the party"); Bruce A. McGlauflin, *The exception that threatens to swallow the statute: The Statutory exception to Maine's Unfair Trade Practice Act*, Me. Bar. J. 152-157

21

(Summer 2006). Accordingly, summary judgment is not warranted against Plaintiffs' claims simply because The Netherlands is an insurance company regulated by the Bureau of Insurance or because it was engaging in the broadly permitted category of analyzing and adjusting a claim.

> 2. Whether Plaintiffs have Suffered a Loss of Money or Property as a Result of The Netherlands' Allegedly Unfair Trade Practices

The UTPA creates a private remedy for:

> Any person who purchases or leases goods, services or property...primarily for personal, family or household purposes and thereby suffers any loss of money or property...as a result of the use or employment by another person of a method, act or practice declared unlawful by section 207....may bring an action...in the Superior Court...for actual damages, restitution and for such other equitable relief, including an injunction, as the court determines to be necessary and proper.

5 M.R.S.A. § 213(1) (2015).

"The plain language of th[is] statute denies relief for plaintiffs who do not demonstrate injury from the alleged deceptive or unfair practice." *McKinnon v. Honeywell Int'l, Inc.*, 2009 ME 69, ¶ 21, 977 A.2d 420 (quotation omitted). The demonstrated injury "must be substantial." *Id.* (citation omitted). "The substantial injury requirement is a limitation on the use of the UTPA for a private cause of action." *Id.* (citation omitted). "The failure to establish a loss of money or property as a result of [the insurer's] actions...is fatal to [a] UTPA claim." *Curtis v. Allstate Ins. Co.*, 2002 ME 9, ¶ 38, 787 A.2d 760 (affirming grant of summary judgment where "plaintiffs' statement of material facts is completely devoid of any evidence that they suffered a loss of money or property as a result of" allegedly deceptive trade practice); *see also William Mushero, Inc. v. Hull*, 667 A.2d 853, 855 (Me. 1995) (finding of damages caused by violation of UTPA not clearly erroneous where there was evidence indicating that homeowner had to

22

pay additional expenses to level road in order to achieve desired goal that was not met by defendant's construction).

Here, there is no evidence indicating that Plaintiffs suffered any loss of money or property as a result of The Netherlands' alleged violation of the UTPA. At most, Plaintiffs have alleged an unnecessary delay in receiving the money they contend they are due. As discussed *supra* sections II(A) & (B), the Unfair Claims Settlement Practices statute is specifically designed to deal with this delay, the UTPA is not the proper method for Plaintiffs to seek recovery and summary judgment is warranted.[7]

E. Whether Summary Judgment is Warranted Against Plaintiffs' Request for Punitive Damages

The Netherlands asserts that Plaintiffs are not entitled to punitive damages because said damages are not available for a breach of contract, even an egregious breach. Plaintiffs respond that summary judgment is not warranted because there are issues of fact as to Plaintiffs' statutory counts and sufficient evidence to support a finding of actual or implied malice.

Maine law is well settled that "[n]o matter how egregious the breach, punitive damages are unavailable...for breach of contract[.]" *Drinkwater v. Patten Realty Corp.*, 563 A.2d 772, 776 (Me. 1989) (citation omitted). Furthermore, punitive damages are not available, as a matter of law, under a strict construction of the unfair claims settlement practices statute, 24-A M.R.S.A. § 2436-A. *E.g. Grich v. Anthem Health Plans of Me.*, 2007 Me. Super. LEXIS 101, *8-9 (May 18, 2007); *Anderson v. CIGNA Healthcare of Maine*, 2005 Me. Super. LEXIS 139, *11-12 (Oct. 27, 2005).

---

[7] Because Plaintiffs have not suffered a loss of money or property as a result of The Netherlands' alleged violation of the UTPA, the Court need not, and does not, reach The Netherlands' remaining arguments against Plaintiffs' UTPA claim.

Given that Plaintiffs' surviving claims are for breach of contract, declaratory judgment, and violation of the unfair claims settlement practices statute, Plaintiffs have not stated a basis for recovering punitive damages. Accordingly, summary judgment is warranted against that request.

IV. Conclusion

For the reasons discussed, it is hereby ORDERED AND ADJUDGED AS FOLLOWS:

The Netherlands' motion for summary judgment is granted against the following counts of Plaintiffs' Amended Complaint:

Count III: Overdue Payments under 24-A M.R.S.A. § 2436;

Count III: Unfair Claims Settlement Practices under 24-A M.R.S.A. § 2436-A(1)(E);

Count IV: Negligent Infliction of Emotional Distress;

Count V: Intentional Infliction of Emotional Distress; and

Count VI: Unfair Trade Practices Act.

Summary judgment is also granted against Plaintiffs' request for punitive damages.

The Netherlands' motion for summary judgment is denied as to Count III for violation of the Unfair Claims Settlement Practices Statute under 24-A M.R.S.A. § 2436-A(1)(B) & (D).

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: June 3, 2016

Michaela Murphy
Justice, Business & Consumer Court

Entered on the Docket: 6 · 3 ·16
24    Copies sent via Mail___ Electronically ✓